IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

FRANCIS STEFFAN HAYES,

         Plaintiff,

   v.

STATE OF OREGON and KATE BROWN,
in her personal capacity,

         Defendants.

Case No. 1:20-cv-01332-CL

**ORDER AND OPINION**

AIKEN, District Judge:

      Plaintiff, Francis Steffan Hayes, brings this action against the state of Oregon and Governor Kate Brown.  Plaintiff alleges numerous state and federal statues and constitutional provision as the basis for this suit.  As far as the Court can discern from the complaint, plaintiff alleges that he was denied entry to a Coastal farm store, presumably in White City, Oregon, by store employees because he refused to wear a

PAGE 1 – ORDER AND OPINION

face covering.[1]   Ultimately, he alleges that he was charged with "trespass" in connection with incident.  Compl. at 1.

In addition to requesting, *inter alia*, monetary damages in the amount of $100,000 for himself and $21,000,000,000 to be split among every adult in the state of Oregon, plaintiff also moves the Court for:

> an immediate emergency restraining order / injunction against Kate Brown and The State of Oregon from further enforcing ANY provisions that were created under the fraudulent usurpation know[n] as executive order 03-20, declaring an emergency that has never, in reality, existed and does not exist now.

*Id*. at 4. (internal quotation marks omitted).  The Court construes this specific request as a motion for a temporary restraining order ("TRO").   For the reasons set forth below, the motion is DENIED

## LEGAL STANDARD

A TRO is an "extraordinary and drastic remedy."  *Mazurek v. Armstrong*, 520 U.S. 986, 972 (1997).  The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The same general legal standards govern TROs and preliminary injunctions. Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).  A plaintiff seeking such relief must establish (1) a likelihood of

---

[1] It is unclear who denied plaintiff entry to the store, as he only alleges that he was "accosted by black mask wearing thugs claiming authority to deny him entry by order of Kate Brown and refusing ANY exemptions."  *Id*.

success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) a preliminary injunction is in the public interest. *Winter v. Nat'l Resources Def Council*, 555 U.S. 7, 21 (2008). A court may not enter a preliminary injunction without first affording the adverse party notice and an opportunity to be heard. Fed. R. Civ. P. 65(1)(2); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985). By contrast, in an emergency TRO may be entered without notice. *See* Fed R. Civ. P. 65(b)(l)(A) (restricting availability of ex parte TROs to situations in which "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition").

## DISCUSSION

Though not specifically pleaded, the Court assumes that plaintiff was affected by the Statewide Mask, Face Shield, Face Covering Guidelines which were issued by the Oregon Health Authority on July 24, 2020.[2] https://sharedsystems.dhsoha.state. or.us/DHSForms/Served/le2288k.pdf (last accessed on August 24, 2020). These guidelines were promulgated by the Governor of the State of Oregon, Kate Brown, in an ongoing effort to combat the indisputable effects of the pandemic caused by 2019 novel coronavirus ("COVID-19"). State and federal officials alike have recognized

---

[2] Though plaintiff claims that he was refused any exemptions when he attempted to enter the Coastal farm store without a mask, the Guidance specifically orders businesses to provide accommodations to customers as required by state and federal disability laws, state and labor laws, state and federal public accommodation laws, and OHA public health guidance.

that this outbreak represents a public health emergency.  On March 3, 2020, the President of the United States declared a state of emergency in response to the spread of COVID-19  *See Proclamation on Declaring National Emergency Concerning the COVID-19 Outbreak,* https://www.whitehouse.gov/presidential-actions/ proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last accessed August 12, 2020).  Likewise, Governor Brown declared a state of emergency in the State of Oregon in response to the pandemic on March 8, 2020 in Executive Order 20-03.  https://www.oregon.gov/gov/Documents/ executive_orders/eo_20-03.pdf/ (last accessed August 12, 2020).  That Executive Order and the state of emergency caused by COVID-19 have been twice extended on May 1, 2020 and June 30, 2020.  https://www.oregon.gov/gov/Documents/executive_ orders/eo_20-30.pdf/ (last accessed August 12, 2020).

Though the nature of his pleadings is unclear, for the purposes of resolving this motion, the Court assumes that plaintiff is arguing that Oregon's current face covering restrictions violate his rights secured by the Fifth and Fourteenth Amendments to the U.S. Constitution.  The Court declines to address plaintiff's claims brought under state law, as those are likely barred by the Eleventh Amendment.  Further, the specific federal laws cited by plaintiff are criminal statutes and provide no private right of action.

The Court finds that the granting extraordinary emergency relief requested by plaintiff would be inappropriate in this case.  First, the Court finds that plaintiff has

PAGE 4 – ORDER AND OPINION

failed demonstrate any likelihood of success on the merits or substantial questions going to the merits. The Supreme Court "has distinctly recognized the authority of a state to enact quarantine law and health law of every description." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905) (quotations omitted). "According to settled principles, the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and public safety." *Id*.

In *Jacobson*, the Supreme Court rejected a plaintiff's argument that a compulsory vaccination law violated his Fourteenth Amendment rights. Here, plaintiff vaguely asserts that the present requirements restrict his liberty as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. The Supreme Court explained in *Jacobson*, however, that:

> the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy.

*Id*. at 26. The Court concluded that:

> Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others. This [C]ourt has more than once recognized it as a fundamental principle that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state[.] . . . The possession and

PAGE 5 – ORDER AND OPINION

enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community.  Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will.  It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is, then, liberty regulated by law.

*Id.* at 26-27.

At this early stage of the proceedings, the Court is persuaded against issuing emergency injunctive relief and agrees with reasoning of numerous other courts which have applied the principles outlined in *Jacobsen* and rejected similar claims. *See Robinson v. Attorney General*, 957 F.3d 1171, 1182–83 (11th Cir. 2020*); Altman v. Cty. of Santa Clara*, 2020 WL 2850291 (N.D. Cal. June 2, 2020); *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496 (D. Md. May 20, 2020); *Open Our Oregon v. Brown*, 2020 WL 2542861 (D. Or. May 19, 2020); *PCG-SP Venture I LLC v. Newsom* (C.D. Cal. June 23, 2020); *Geller v. De Blasio*, 2020 WL 2520711 (S.D.N.Y. May 18, 2020); *Elim Romanian Pentecostal Church v. Prikzker*, 2020 WL 2517093 (7th Cir. May 16, 2020); *Spell v. Edwards*, 2020 WL 2509078 (M.D. La. May 15, 2020); *In re Abbott*, 954 F.3d 772 (5th Cir. April 7, 2020); *Henry v. DeSantis*, 2020 WL 2479447 (S.D. Fla. May 14, 2020); *Cavalry Chapel of Bangor v. Mills*, 2020 WL 2310913 (D. Me. May 9, 2020); *Cassell v. Snyders*, 2020 WL 2112374 (N.D. Ill. May 3, 2020); *Legacy Church, Inc. v. Kunkel*, 2020 WL 1905586 (D.N.M. Apr. 17, 2020); *Cross Culture Christian Ctr. v. Newsom*, 2020 WL 2121111 (E.D. Cal. May 5, 2020); *Gish v.*

PAGE 6 – ORDER AND OPINION

*Newsom*, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020); *McGhee v. City of Flagstaff*, 2020 WL 2308479 (D. Ariz. May 8, 2020).

Indeed, Chief Justice Roberts recently reiterated the need for judicial deference to public health officials during a public health crisis. *See S. Bay United Pentecostal Church v Newsom*, 140 S. Ct. 1613 (2020). Noting the broad discretion of the State to fashion responses to the present epidemic and emphasized the federal judiciary's limited role in overseeing those responses, he wrote:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts [t]he safety and the health of the people to the politically accountable officials of the States to guard and protect. When those officials undertake[ ] to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad. Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people.

*Id.* (Roberts, C.J., concurring) (alterations in original) (internal citations and quotations omitted).

The Court need not reach the ultimate question of whether the restrictions of which plaintiff complains violate his constitutional rights in light of the framework established in *Jacobson*. That question is better left to a more intensive analysis after defendants have an opportunity to appear and file responsive pleadings. For now, it is enough to find that plaintiff has failed to show a sufficient likelihood of success on the merits which would justify the requested relief.

PAGE 7 – ORDER AND OPINION

The Court also finds that the irreparable injury factor weighs against granting the requested relief.  It is axiomatic that a moving party must demonstrate a significant threat of impending irreparable injury, irrespective of the magnitude of the injury.  *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist., Anchorage, Alaska*, 868 F.2d 1085, 1088 (9th Cir. 1989).  Here, plaintiff does not seek to maintain the status quo in the face of an impending irreparable harm, rather he seeks a sweeping mandatory injunction which would instead drastically alter the status quo because of a harm which already occurred.

The remaining factors, the balance of the equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009.)  The Court finds that these factors also weigh against granting a TRO. The requested relief would invalidate every order made pursuant to the Governor's declaration of a public emergency which has been in place for months.  The harm to the public in granting such a TRO, which may result in more transmissions of COVID-19 and more cases of serious illness and death, far outweighs any potential harm identified in the complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

PAGE 8 – ORDER AND OPINION

## CONCLUSION

For the reasons set forth above, plaintiff's motion for a TRO (Doc. 1) and

Emergency Motion for Preliminary Injunction (Doc. 8) are DENIED.

IT IS SO ORDERED.

Dated this <u>12th</u>  day of August 2020.


<u>                    /s/Ann Aiken                    </u>
Ann Aiken
United States District Judge

PAGE 9 – ORDER AND OPINION