IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| FRANCIS STEFFAN HAYES, | Case No. 1:20-cv-01332-CL |
| Plaintiff, | **ORDER AND OPINION** |
| v. | |
| STATE OF OREGON and KATE BROWN, in her personal capacity, | |
| Defendants. | |

AIKEN, District Judge:

Plaintiff, Francis Steffan Hayes, now moves this Court for reconsideration (Doc. 11) of its previous order denying his requests for emergency injunctive relief against defendants, the State of Oregon and Kate Brown. Doc. 9. Plaintiff also moves this Court to recuse itself from this case. Docs. 11 and 12. For reasons set forth below, plaintiff's motions are DENIED.

/ / /

PAGE 1 – ORDER AND OPINION

## BACKGROUND

Plaintiff filed the present complaint on August 7, 2020. Doc. 1. This case was assigned to Magistrate Judge Mark Clarke. Doc. 2. On August 12, 2020, plaintiff filed what he styled an emergency motion for preliminary injunction. Doc. 8. Plaintiff's complaint also contained a request for an "immediate emergency injunction." Pl's Compl. at 1. Given the nature of the requests and the fact that defendants had neither been served or appeared, this Court construed the requests as motions for a Temporary Restraining Order ("TRO") under Fed. R. Civ. P. 65(b). The Court then denied those requests, finding that the factors outlined in *Winter v. Nat'l Resources Def. Council* did not support granting the *ex parte* relief sought by plaintiff. 555 U.S. 7, 21 (2008).

At the heart of this case is an incident where plaintiff was denied entry to a Coastal farm store because he refused to wear a face covering. As the Court noted in its previous opinion, it is unclear from the proceedings whether plaintiff was denied entry by store employees or law enforcement officers, though he alleges was charged with "trespass" in connection with the incident. Compl. at 1.

## LEGAL STANDARD

A TRO is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 986, 972 (1997). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir.

2006). The same general legal standards govern TROs and preliminary injunctions. Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A plaintiff seeking such relief must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) a preliminary injunction is in the public interest. *Winter v. Nat 'l Resources Def Council*, 555 U.S. 7, 21 (2008). A court may not enter a preliminary injunction without first affording the adverse party notice and an opportunity to be heard. Fed. R. Civ. P. 65(1)(2); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985). By contrast, in an emergency TRO may be entered without notice. See Fed R. Civ. P. 65(b)(l)(A) (restricting availability of ex parte TROs to situations in which "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.")

## DISCUSSION

Following the denial of his previous motion, plaintiff filed various objections to that opinion as well as requests for the Court to recuse from this case and reconsider the denial of his motion for a TRO. Docs. 11, 12, and 14. Plaintiff subsequently filed a Motion for Preliminary Injunction. Doc. 13. On August 20, 2020, plaintiff also filed a notice of appeal regarding the Court's decision denying his requests for emergency injunctive relief. Doc. 15. This Court has received notice from the Ninth Circuit

PAGE 3 – ORDER AND OPINION

Court of Appeals that appellate proceedings are "held in abeyance" until plaintiff's pending motion for reconsideration was resolved.[1]  Doc. 16.  The Court notes that defendants have not yet been served in this matter.

Turning to the present motions, the Court shall first address the motions for recusal and then the motion for reconsideration.

*I.    Motions for Recusal*

The Court initially notes that this case is assigned to Magistrate Judge Mark Clarke.  Doc. 2.  However, full consent to Magistrate jurisdiction has not been made in this case pursuant to Fed. R. Civ. Pro. 73(b).  Accordingly, the District of Oregon's Local Rules and Case Assignment Plan require that a U.S. District Judge be assigned to this case to make final determinations on dispositive matters and hear any motions for preliminary injunctions or TROs.  I was duly assigned to this case when plaintiff requested emergency injunctive relief.  Plaintiff and defendants, once they are served and appear, may consent to Magistrate Jurisdiction anytime while this case is pending.

In his motions for recusal, plaintiff advances several arguments as to why I should recuse myself from this case which include my previous adverse ruling on his motions for injunctive relief as well as decisions I have made in other unrelated cases.  Plaintiff also alleges that I am "a democratic party activist."  Pl's Mot. to Recuse at 6.

---

[1] Plaintiff filed a motion to withdraw his motions for reconsideration.  Doc. 17. The Court addresses the motion on the merits for clarity and to complete the record.

PAGE 4 – ORDER AND OPINION

He also makes note of past political activity of my family members as well as statements that I have made which he claims show bias in favor of Governor Kate Brown in this case. I shall address each argument in turn.

As a threshold matter, plaintiff has not identified the statutory authority under which he moves for recusal. Two federal statutes govern recusal and disqualification: 28 U.S.C. § 144 and 28 U.S.C. § 455. Section 144 provides that a judge shall be disqualified where she has a "personal bias or prejudice either against [a party] or in favor of any adverse party[.]" *See United States v. Heffington,* 952 F.2d 275, 278 (9th Cir.1991). Under § 144, the party moving for recusal must file a timely and legally sufficient affidavit stating "the facts and the reasons for the belief that bias or prejudice exists" and must include certificate of counsel of record stating that it is made in good faith. 28 U.S.C. § 144. Conclusory allegations are insufficient to support a request for recusal on grounds of bias or prejudice. *United States v. $292,888.04 in U.S. Currency,* 54 F.3d 564, 566 (9th Cir.1995). Similarly, § 455 provides that federal judges and magistrate judges must recuse themselves "in any proceeding in which [their] impartiality might be reasonably questioned[,]" including if they have "a personal bias or prejudice concerning a party." 28 U.S.C. §§ 455(a), (b)(1); *see Heffington*, 952 F.2d at 278.

Under § 144, a challenged judge must determine in the first instance whether the affidavit required in the statute is legally sufficient and, if so, must refer the motion to another judge for determination. *See United States v. Montecalvo*, 545 F.2d

PAGE 5 – ORDER AND OPINION

684, 685 (9th Cir.1976). Here, I find that plaintiff has failed to file a sufficient affidavit or a sufficient certification stating that the affidavit is made in good faith. *See Davis-Rice v. United State*, 2011 WL 4984062, at *1 (N.D. Cal. Oct. 19, 2011) (citing *Robinson v. Gregory*, 929 F. Supp. 334, 337–38 (S.D. Ind. 1996) ("holding certification by member of the bar is necessary to prevent abuse of recusal procedures"))

However, I find that plaintiff arguments should be considered on their merits and, accordingly, construe the motion as being made pursuant to 28 U.S.C. § 455. In either case, the standard for recusal under §§ 144 and 455 is the same: "whether a reasonable person with the knowledge of all the facts would conclude the judge's impartiality might be questioned." *Taylor v. Regents of the Univ. of Calif.,* 993 F.2d 710, 712 (9th Cir.1993) (internal quotation marks omitted). The standard requires recusal if a reasonable third-party observer would perceive a "significant risk" that the judge would resolve the case on a basis other than the merits. *Cuevas v. Kelly*, 2019 WL 2518121, at *1 (D. Or. June 18, 2019) (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 860 (1988)). "The reasonable person in this context means a well-informed, thoughtful observer, as opposed to a hypersensitive or unduly suspicious person." *Clemens v. U.S. Dist. Court for the Central Dist. of Nevada*, 428 F.3d 1175, 1178 (9th Cir. 2005) (internal quotations and citations omitted). To warrant recusal, judicial bias must stem from an extrajudicial source and not from

conduct or rulings made during the course of proceedings. *$292,888.04 in U.S. Currency,* 54 F.3d at 566.

A judge "must not simply recuse out of an abundance of caution when the facts do not warrant recusal. Rather, there is an equally compelling obligation not to recuse where recusal in not appropriate." *United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1198, 1200-01 (E.D. Cal. 2010) (citing *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008); *see also Perry v. Schwarzenegger*, 630 F.3d 909, 916 (9th Cir. 2011) ("It is ... important ... that judges not recuse themselves unless required to do so, or it would be too easy for those who seek judges favorable to their case to disqualify those that they perceive to be unsympathetic merely by publicly questioning their impartiality.")

I find that plaintiff has presented only conclusory and broad statements premised entirely on conjecture in his motions. First, in his second motion to recuse, plaintiff seems to argue for recusal because he disagrees with my ruling on his previous motions. However, a judge's prior adverse ruling alone is an insufficient basis for recusal. *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984). I decline to recuse myself simply because plaintiff feels my previous decision was in error.

Next, plaintiff complains that I have political bias warranting removal. He bases this allegation primarily on political campaign work that I performed in the early 1980's. Past political activity alone is insufficient to warrant recusal. Several circuits have opined that "it is, of course 'an inescapable part of our system of

PAGE 7 – ORDER AND OPINION

government that judges are drawn primarily from lawyers who have participated in public and political affairs'" *Higganbotham v. Oklahoma ex rel. Oklahoma Transp. Comm'n*, 328 F.3d 638, 645 (10th Cir. 2003) (*citing United States v. Alabama*, 828 F.2d. 1532, 1543 (11th Cir. 1987); *see also In re Mason,* 916 F.2d 384, 386 (7th Cir. 1990) ("Courts that have considered whether pre-judicial political activity is ... prejudicial regularly conclude that it is not."). Given that the activity cited by plaintiff occurred nearly 40 years ago, I find that this is not a sufficient reason for recusal.

Plaintiff also complains of past statements that I have made regarding Governor Kate Brown as further evidence of political bias. Though he fails to cite a source for these statements, doubtless they were drawn from a 2015 article which reported the portrait unveiling of former Oregon Supreme Court Justice Betty Roberts. Cipolle, Alex, *Setting the World on Fire,* EUGENE WEEKLY, Feb. 19, 205. https://eugeneweekly.com/2015/02/19/setting-the-world-on-fire/. On the same day as that event, Governor John Kitzhaber announced his resignation, and Brown, then Secretary of State, became Governor. The article, appearing in the Eugene Weekly, primarily focuses on the event honoring the life of Justice Roberts. In offhand remarks also appearing in the article, I did compare Governor Brown's legislative background to Justice Robert's and remarked that with that experience, "Kate Brown will do well." *Id.* I find plaintiff's allegations are conclusory at best. These offhand

PAGE 8 – ORDER AND OPINION

remarks which occurred five years before this case was filed, do not constitute bias warranting recusal.

Likewise, plaintiff complains about the political actives of my late husband, James Klonoski, who plaintiff notes served a term as chair of the Democratic Party of Oregon. Political activity a the judge's spouse, or other family member, whose views as an independent person and professional cannot be imputed to the judge. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1090 (N.D. Cal. 2017) ("While marriage imposes some limits on each partner's personal autonomy, spouses do not give up their freedom of thought and expression"); *Perry v. Schwarzenegger*, 630 F.3d 909 at 916. (when dealing with a similar motion to recuse Judge Reinhard noted that his wife "is an independent person who need not obtain my approval or agreement to advocate for whatever social causes she chooses. The views are hers, not mine.") I decline to recuse myself on this basis.

Plaintiff's arguments regarding his disagreement with my decisions in two unrelated cases, a criminal matter and a civil case dealing with climate change issues, are also not grounds for recusal. Though it appears plaintiff disagreed with rulings in those cases, the cases and rulings are not related to the one at hand, nor were any of the present parties involved in those suits. I find that this argument fails to show a "personal bias or prejudice concerning a party" in the present case. 28 U.S.C. §§ 455(a).

PAGE 9 – ORDER AND OPINION


remarks which occurred five years before this case was filed, do not constitute bias warranting recusal.

Likewise, plaintiff complains about the political actives of my late husband, James Klonoski, who plaintiff notes served a term as chair of the Democratic Party of Oregon. Political activity a the judge's spouse, or other family member, whose views as an independent person and professional cannot be imputed to the judge. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1090 (N.D. Cal. 2017) ("While marriage imposes some limits on each partner's personal autonomy, spouses do not give up their freedom of thought and expression"); *Perry v. Schwarzenegger*, 630 F.3d 909 at 916. (when dealing with a similar motion to recuse Judge Reinhard noted that his wife "is an independent person who need not obtain my approval or agreement to advocate for whatever social causes she chooses. The views are hers, not mine.") I decline to recuse myself on this basis.

Plaintiff's arguments regarding his disagreement with my decisions in two unrelated cases, a criminal matter and a civil case dealing with climate change issues, are also not grounds for recusal. Though it appears plaintiff disagreed with rulings in those cases, the cases and rulings are not related to the one at hand, nor were any of the present parties involved in those suits. I find that this argument fails to show a "personal bias or prejudice concerning a party" in the present case. 28 U.S.C. §§ 455(a).

Reviewing all of plaintiff's arguments, I find that plaintiff has failed to show that a reasonable person with the knowledge of all the facts would conclude that my impartiality in this matter might be questioned. Accordingly, the motions for recusal are denied.

## II. Motion for Reconsideration

A district court is permitted to reconsider and amend a previous order pursuant to Fed. R. Civ. Pro. 59(e). A motion for reconsideration, however, is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations omitted). Reconsideration is appropriate only if "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999).

In denying his motion for a TRO, this Court found that none of the *Winter* factors supported granting the extraordinary relief requested by plaintiff. On reconsideration, plaintiff has not presented newly discovered evidence in his motion, nor does he point to any intervening change in controlling law relevant to this

matter.[2]  Thus, the Court construes plaintiff's argument to be that the Court clearly erred in its previous opinion.

Plaintiff primarily relies on the assertion that the current declaration of emergency related to the COVID-19 pandemic is violative of his due process rights guaranteed under the Fifth and Fourteenth Amendments. The Court previously assumed that plaintiff argued that Oregon's current face covering restrictions violate his rights. Plaintiff has clarified that he "is attacking the underlying declaration of emergency." Pl's Obj. at 2. Governor Brown declared a state of emergency in the State of Oregon in response to the pandemic on March 8, 2020 in Executive Order 20-03. https://www.oregon.gov/gov/Documents/ executive_orders/eo_20-03.pdf/. This order has been extending multiple times, and now remains in force through March 3, 2021. https://www.oregon.gov/gov/Documents/executive_orders/eo_20-67.pdf. This clarification makes plaintiff's claims harder to adjudicate in the context of a TRO because it is unclear in his complaint, outside of the Coastal store incident, what cognizable harms he has suffered as a result of the numerous other executive orders and directives that have been put in place pursuant to Executive Order 20-03.

Plaintiff previously requested

> an immediate emergency restraining order / injunction against Kate Brown and The State of Oregon from further enforcing ANY provisions that were created under the fraudulent usurpation know[n] as executive

---

[2] Indeed, plaintiff cites to no statutory authority or case law which would support reconsideration.

PAGE 11 – ORDER AND OPINION

> order 03-20, declaring an emergency that has never, in reality, existed and does not exist now.

Pl's Compl. at 4. (internal quotation marks omitted).

In examining whether plaintiff had shown a likelihood of success on the merits of his claims, the Court previously relied on the U.S. Supreme Court's holding in *Jacobson v. Commonwealth of Massachusetts* as providing the appropriate framework under which to evaluate plaintiff's claims. 197 U.S. 11, (1905). There, the Court held that "the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and public safety." *Id.* at 25.

Accordingly, the question before Court is not whether Governor Brown's executive orders are desirable as a policy matter; it is whether those proclamations have some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.; see also Hartman v. Acton,* 2020 WL 1932896, at *6 (S.D. Ohio Apr. 21, 2020) ("Even where the state enacts an order pursuant to its police powers to stem the spread of an infectious disease, the constitution's guarantees continue to operate as limits to action."); *Altman v. Cty. of Santa Clara,* 2020 WL 2850291, at *8 (N.D. Cal. June 2, 2020). ("Under *Jacobson*, an emergency statute purporting to have been enacted to protect the public health, the public morals, or the public safety must yield

PAGE 12 – ORDER AND OPINION

to a fundamental right if it has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of the right.")

Plaintiff's pleadings indicate that he does not believe the number of deaths caused by the COVID-19 in Oregon are high enough to justify the declaration of a statewide emergency, or even one in Jackson County, where he resides. However, plaintiff offers scant evidence in his complaint to justify that assertion, nor does he provide expert opinions, verified sources for claims, or similar evidence to support his views. His pleadings are insufficient to show that Executive Order 20-03 has no real of substantial relation to protecting public health. Indeed, aside from the number of deaths, the Executives Order notes the increase in daily COVID-19 cases and the strain that the infection places on the State's hospital system. Stemming those ill effects certainly seems substantially related to the aforementioned mask mandate and broader declaration of emergency.

Indeed, plaintiff's arguments seem more focused on the severity of the pandemic and his belief that the measures the State has taken are unnecessary. Even if plaintiff's assertions regarding a low mortality rate from COVID-19 compared with other causes of death were true, plaintiff ignores the likelihood that the restrictions which were put in place reduced the number of deaths and cases that the state has experienced. *See Six v. Newsom,* 2020 WL 2896543, at *4 (C.D. Cal. May 22, 2020) (emphasis in original).

PAGE 13 – ORDER AND OPINION

The Court emphasizes that its role is not to "usurp the functions of another branch of government" in deciding how best to protect public health, as long as the measures are not arbitrary or unreasonable.[3] *Jacobson*, 197 U.S. at 28. Although there may be more than one reasonable way to respond to the COVID-19 outbreak, at this stage of the proceedings it is seems that the Governor's orders have at least a real and substantial relation to protecting public health. *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496, at *7 (D. Md. May 20, 2020). Likewise, plaintiff has not shown that these restrictions are beyond all question, a plain, palpable invasion of rights secured by the fundamental law.

Plaintiff also objects to the Court's statement regarding defendant's possible Eleventh Amendment Immunity regarding his claims based on Oregon state law in in the previous order. Here, plaintiff complains that Executive Order 20-03 violates Or. Rev. Stat. § 401.165, which provides that "[t]he Governor may declare a state of emergency by proclamation at the request of a county governing body or after determining that an emergency has occurred or is imminent."[4] Plaintiff points out

---

[3] "Under the Constitution, state and local governments, not the federal courts, have the primary responsibility for addressing COVID–19 matters such as quarantine requirements, testing plans, mask mandates, phased reopenings, school closures, sports rules, adjustment of voting and election procedures, state court and correctional institution practices, and the like." *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2614, 207 L. Ed. 2d 1129 (2020) (J. Kavanugh, dissenting).

[4] Plaintiff cites various other statutes that appear to criminal statutes which do not provide a civil right of action.

PAGE 14 – ORDER AND OPINION

that Oregon statutes define emergency as a "human created or natural event or circumstance that causes or threatens widespread loss of life, injury to person or property, human suffering or financial loss[.]" Or. Rev. Stat. § 401.165.  Plaintiff argues that the loss of life which has occurred in the State is not widespread enough to justify the declaration of emergency.

However, as this Court has noted, it is unclear whether this Court has jurisdiction to hear claims based on violations of a state statute or the Oregon constitution in this case.  To clarify, federal courts are prohibited by the Eleventh Amendment from relying on state law to enjoin state officials. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, (1984), 465 U.S. at 106; *see also Six*, 2020 WL 2896543, at *8 (holding that *Pennhurst* warranted denial of state law claims in request for temporary restraining order).

If plaintiff is claiming that the statute itself is unconstitutional under the United States Constitution, the Court believes that the statute would likely survive a rational basis review for the similar reasons to those noted above. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.")  Finally, even if the Court were to engage in analysis of whether the Executive Order violated the state statute, then the Court would have to note that the Oregon Revised Statue defining emergency

PAGE 15 – ORDER AND OPINION

specifically includes "disease" as a type of event which would qualify for the designation. Or. Rev. State. § 401.165(a)

Plaintiff also complains that he requested an expedited oral hearing on his previous motion that was not granted by this Court. The Court has authority to manage its docket as needed. Moreover, in federal court, motions for TRO, given their time sensitive nature, are often decided without hearings.

Again, the Court finds that defendant has failed to show any likelihood of success on the merits which would justify granting a TRO.

Turning to the remaining *Winter* factors, the Court also finds that the irreparable injury factor weighs against granting the requested relief. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). However, it is axiomatic that a moving party must demonstrate a significant threat of impending irreparable injury, irrespective of the magnitude of the injury. *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist., Anchorage, Alaska*, 868 F.2d 1085, 1088 (9th Cir. 1989); *see also, PCG-SP Venture I LLC v. Newsom,* 2020 WL 4344631, at *3 (C.D. Cal. June 23, 2020) (" The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury, that must be imminent in nature.") (internal citations omitted). Here, plaintiff does not seek to maintain the status quo in the face of an impending irreparable harm, rather he seeks a sweeping mandatory injunction which would instead drastically alter the status

PAGE 16 – ORDER AND OPINION

quo because of a harm which already occurred. As noted above plaintiff has likely not shown that his constitutional rights have been violated. It is also noteworthy, that Executive Order that plaintiff requests this court enjoin was in place for several months prior to plaintiff bringing this suit, which also indicates against finding emergent irreparable harm contemplated in issuing a TRO.

The remaining factors, the balance of the equities and the public interest, "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009). "The Court must balance the public's interest in preventing constitutional harm against the government's – and the public's – interest in controlling the spread of a dangerous pandemic." *Altman v. Cty. of Santa Clara,* 2020 WL 2850291, at *19.

The Court again finds that these factors also weigh against granting a TRO. The requested relief would invalidate every order made pursuant to the Governor's declaration of a public emergency which has been in place for months. The harm to the public in granting such a TRO, which may result in more transmissions of COVID-19 and more cases of serious illness and death, outweighs the potential harm identified in the complaint.

III.  *Motion for Preliminary Injunction*

Finally, plaintiff has filed a second motion for preliminary injunction, Doc. 13. He complains that the Court wrongfully terminated his previous motion for a preliminary injunction and raises arguments that have already been considered by

PAGE 17 – ORDER AND OPINION

the Court here and in its previous order. In the motion he requests that the Court "issue an immediate temporary injunction/restrain[in]g order." Pl's Mot. for Prelim. Inj. And Exp. Oral Arg. At 6. The Court again construes this as a request for a TRO. The motion is denied for the reasons set forth above and in the Court's previous order.

Were the Court to construe the filing as a Motion for a Preliminary Injunction, then it would be denied because *ex parte* preliminary injunctions are not allowed under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.") Plaintiff has not yet served defendants in this matter. Accordingly, they have received no notice of plaintiff's claims or the request for preliminary injunctive relief.

## CONCLUSION

The Court advises plaintiff that a ruling on a TRO or preliminary injunction is not a ruling on the merits of his case. It may be that initial injunctive relief is not warranted in a case, but that a party may still, later prevail on claims upon final adjudication. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). Further, simply because the Court denied his motions for a TRO, plaintiff is not barred from pursuing a preliminary injunction once he completes service on defendants and they have appeared in this matter.

For the reasons set forth above, plaintiff's motion to recuse and motion for reconsideration (Docs. 11 and 12) are DENIED. Plaintiff's renewed motion for a

preliminary injunction (Doc. 13) is DENIED.  The request for oral argument is DENIED as unnecessary.

    IT IS SO ORDERED.

    Dated this __3rd__ day of February 2021.

                                                  __/s/Ann Aiken__
                                                    Ann Aiken
                                          United States District Judge